**IN THE COURT OF APPEALS OF IOWA**

No. 22-0141
Filed October 19, 2022

**IN RE THE MARRIAGE OF KATHRYN KAY DORSEY
AND MYRON LEE DORSEY**

**Upon the Petition of
KATHRYN KAY DORSEY,**
        Petitioner-Appellee,

**And Concerning
MYRON LEE DORSEY,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Andrew B.

Chappell, Judge.

        Myron Dorsey appeals the transitional spousal support ordered upon the

dissolution of his marriage to Kathryn Dorsey.  **AFFIRMED.**

        Caitlin Slessor of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for

appellant.

        Alison Werner Smith and Karina A. Miller of Hayek, Moreland, Smith &

Bergus, L.L.P., Iowa City, for appellee.

        Considered by Bower, C.J., Tabor, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**BOWER, Chief Judge.**

Myron Dorsey appeals the transitional spousal support ordered upon the dissolution of his almost thirteen-year marriage to Kathryn Dorsey.[1] He does not challenge the child-support, child-custody, or property distribution provisions of the dissolution decree. Finding no failure to do equity, we affirm.

We review spousal support questions de novo, but "we accord the trial court considerable latitude." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (citation omitted). As a result, we disturb the district court's order for spousal support "only when there has been a failure to do equity." *Id.* (citation omitted).

Myron contends the spousal support ordered is not warranted because Kathryn has an interest in a trust "worth millions of dollars."[2] Even assuming the trust is "worth millions," the district court found

> Kathryn has never seen a dime from the trust and, unless and until her parents and aunt and uncle die, she never will. In the interim, the farmland could all be sold and the proceeds exhausted for the benefit of the current trustees. It also is not beyond the realm of possibility that she predeceases the trustees. For the court, it's all too speculative.

Myron claims Kathryn has a present right to the trust proceeds and spends a great deal of his brief arguing about the interpretation of the various trust

---

[1] We note the district court labeled the spousal support as rehabilitative; it is more aptly referred to as transitional alimony. *See In re Marriage of Pazhoor*, 971 N.W.2d 530, 546-47 (Iowa 2022) ("As we now recognize, transitional alimony is appropriate when a party capable of self-support nevertheless needs short-term financial assistance to transition from married to single life.").

[2] Though Myron notes the trust generates annual income from its farming operation of approximately $30,000, the income is paid to others—not Kathryn.

documents.[3]  Yet, Myron does not deny Kathryn "has never seen a dime from the trust."

The court concluded "the equities simply do not call" for the court to consider whatever interest Kathryn might have in the trust.  The trial court wrote:

> The parties have been married approximately [thirteen] years. While not really a long-term marriage that would justify an indefinite, traditional alimony award; the court is hesitant to call the parties' marriage a short-term one—especially by today's standards.  Both parties are of working age, physically and mentally able to work, and have the ability to earn good incomes.  Kathryn has, however, put her focus on earning on the backburner while she made sure she was available for their children.  This was by the agreement of the parties.  And, while Myron argues Kathryn has a greater earning capacity than him given her advanced education, he undersells his own business acumen.  He has run a very successful business for an extended period of time.  He also earns significantly more than Kathryn, and there is no evidence in the record to indicate that will change any time soon, even if Kathryn begins working fulltime. Kathryn's income certainly helped the couple pay the bills, but it was Myron's income that allowed the parties to live the life to which they (and their children) no doubt became accustomed.

With respect to Kathryn's request for five years of transitional alimony, the court noted the parties agreed Kathryn would cut down from full-time to three-quarter time employment to be available for the children.  The parties agreed their two children, born in 2009 and 2010, would be in Kathryn's physical care.  The

---

[3] After its analysis of the trust with respect to the *property division*, the district court found:
> Myron offers no expert opinion to support his argument that Kathryn has the right to access the trust's funds at this time and, in any event, the modification of the trust done in 2017 forestalls any such an interpretation.  Even assuming Myron was correct that Kathryn has a present interest in this inheritance, the court does not find that a refusal to divide the inherited property is inequitable to Myron.  He is being awarded ample assets and has significant earning capacity.

*Compare* Iowa Code § 598.21(5)(i) (2019) (considering future interests in trust is *not* to be considered in the division of property), *with id.* § 598.21A (noting factors to be considered in determining spousal support).

court found several statutory factors relevant to its spousal support decision[4] and concluded:

> Kathryn's requested spousal support [is] reasonable and equitable under the circumstances. The amount requested is not excessive, and still results in Kathryn having a net monthly income of around half that of Myron. And the duration is reasonable, giving her time to ramp up her earnings while the children get older and need less day-to-day care.

On our de novo review, Myron's income far exceeds Kathryn's[5] and, considering the distribution of marital assets,[6] we find no failure to do equity in the court's award of transitional spousal support to allow time for Kathryn to transition to single life and return to full-time employment.

---

[4] The court wrote:
> In this case, the court finds the most relevant of those factors include: the length of the marriage; the age, and physical and emotional health of the parties; the property distribution; the educational level of each party at the time of marriage and now; the earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, responsibilities for children; and the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

See Iowa Code § 598.21A(1)(a)–(f).

[5] The district court found Myron's annual income is $224,158, and Kathryn's is $56,997.
> For purposes of child support, the court found Myron's adjusted net monthly income was $10,535.75 and Kathryn's adjusted net monthly income without spousal support was $3989.20 and with spousal support $5489.20. Myron was ordered to pay $1927.15 a month in child support based on Kathryn's income with spousal support. As noted, he has not appealed the order for child support.

[6] "Property division and [spousal support] must be considered together in evaluating their individual sufficiency. They are neither made nor subject to evaluation in isolation from one another." In re Marriage of Misol, 445 N.W.2d 411, 413 (Iowa Ct. App. 1989) (citation omitted). Thus, we consider that the court granted each party one-half the marital property, which included the proceeds from the sale of the family home and custom-made furniture.

Kathryn seeks an award of appellate attorney fees, noting that even though Myron has far greater earnings, she spent considerable legal fees at trial and did not seek an award of trial attorney fees. Yet she has now had to defend the court's decree and has incurred additional attorney fees. Her request is supported with an affidavit and itemized statement for legal services.

An award of appellate attorney fees is not a matter of right, but may be awarded in the court's discretion based on "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted). Myron shall pay $10,000 toward Kathryn's appellate attorney fees.

**AFFIRMED.**